Common Pleas Court of Cuyahoga County.

ADDIE A. HULING V. DANIEL A. HULING ET AL.

Decided, July 6, 1916.

*Deed Declared to be a Mortgage—Property Sold By the Mortgagee to an Innocent Purchaser—Redemption Judgment Granted to the Mortgagor.*

Where the circumstances surrounding the execution of a deed are such as to require that it be treated as a mortgage, and the mortgagee by conveying the property to an innocent party has put it out of his power to restore it to the mortgagor under his right of redemption, the mortgagor will be given a redemption judgment equal to the difference in the value of the land at the time of the trial and the indebtedness due under the mortgage with interest.

*Bayly, Simmons & DeWitt,* for plaintiff.
*Norton T. Horr,* contra.

ESTEP, J.

The plaintiff claims that on or about the 24th day of January, 1911, she being the owner in fee simple of the property described in her petition, duly executed and delivered to the defendant, Daniel A. Huling, a warranty deed absolute for a consideration of $10.   She claims that the said consideration was in fact a

loan by defendant, Daniel A. Huling, to the plaintiff of $6,550.23, to .be redeemed with interest at 6% on sixty days notice in writing to the plaintiff's agent, Charles S. Huling, said agent being the husband of the plaintiff herein. Plaintiff· further claims that said deed was given to the defendant, Daniel A. Huling, as a security for said loan; that it was agreed between the said parties and said Charles S. Huling, acting for plaintiff as her agent, that the plaintiff could, at any time, upon a sixty-day notice in writing, pay the amount of said debt to the defendant, and that the defendant would thereupon reconvey said property to the plaintiff in accordance with the terms of said loan. The plaintiff further claims that she has paid the interest on said loan, also taxes, and was in·possession of said property until on or about the 26th day of October, 1915; and that upon that day, without her knowledge or consent, the defendant, Daniel A. Huling, in violation of plaintiff's right of redemption, conveyed the said real estate to one Maude J. Hartman. The said Maude J. Hartman was made defendant herein, but since the institution of this suit she has been dismissed from this action.

The plaintiff states that she is now ready and willing, and hereby offers, to pay the amount found due the defendant arising out of said loan from the said defendant; and she claims that the market value of said property was and is now in excess of the amount of said loan, and that such value is in excess of the sum of $15,000. She therefore prays for an accounting between the parties, that she be permitted to redeem said premises upon the payment of the amount found due, and that the defendant be ordered to reconvey the same to her, and for such other relief as equity and the nature of the case may require.

The defendant,' Daniel A. Huling, answering the claims of the plaintiff, sets up in his answer several promissory notes of different dates owing to him by Charles S. Huling, his brother, and the husband of the plaintiff herein, in addition to the indebtedness set up by the plaintiff in her petition, and claims that when he paid the sum of $6,550.23 into court in order to redeem said property from sheriff's sale, he was informed by his brother that the title to said property was in him, the said Charles S.

Huling. And the said defendant claims than on that day, and as a part of said transaction, he surrendered a promissory note of $6,550.23 which was executed to the plaintiff's said brother at the time the said Daniel A. Huling paid the same to the sheriff of this county.

The said defendant further claims that the land contract which was attached to plaintiff's petition, dated the 30th day of January, 1911, was signed by him upon the representation made to him by the said Charles S. Huling that it was a power of attorney authorizing the said Charles S. Huling to sell the premises for his account; and without further examination, and relying upon his brother's representations, he signed the said paper writing.

Said defendant further claims that he has paid all the taxes due and payable upon said property, except the taxes due and payable on or about July 1, 1912, amounting to $33.89, which his brother, Charles S. Huling, paid to the treasurer of Cuyahoga county, Ohio. And he further says that upon the 26th day of October, 1915, he conveyed the premises in question to the defendant, Maude A. Hartman, who, so far as the said defendant knows, was wholly ignorant of the manner in which this defendant had acquired the title thereto, and wholly ignorant of any possible obligation on the part of this defendant to the defendant, Charles S. Huling, for any part of the consideration received by the defendant for such conveyance.

The said defendant further avers that he received for the conveyance of the property described in the petition, and took therefor, an apartment house located on East 90th street in the city of Cleveland, and says that he is ready and willing to account to and pay over to his said brother, Charles S. Huling, one-half of all that he may receive therefor in excess of sufficient to satisfy the debts hereinbefore recited, and to reimburse him for interest, if any, expenses or advances which he has been required to pay to protect his title. He therefore claims that he holds the property in trust, and not as an absolute owner thereof; and that when the property to which he now holds title, received in exchange for said property described in the petition for the payment of debts owing to him by the said Charles S. Huling,

is sold, he will divide any excess derived from the sale of said property.

The plaintiff replies to this claim of the defendant, and denies that she has any knowledge of any indebtedness of the said Charles S. Huling to the defendant, Daniel A. Huling, and denies that said Daniel A. Huling held or parted with any securities which he held, and also denies that the statements set out in his answer are true. She further says that she authorized her husband, Charles S. Huling, as her agent, to borrow the $6,550.23 from the said Daniel A. Huling, and gave as security therefor the deed referred to in her petition; and she further denies all the allegations set up in the answer which are inconsistent with the claims set forth in her petition and which she has not specifically admitted to be true.

The questions presented by these claims of the parties are as follows:

1.  Was the warranty deed executed on or about the 24th day of January, 1911, from Addie A. Huling to defendant Daniel A. Huling, an absolute deed conveying to him an absolute title in fee simple, or is the said deed, under all the facts and circumstances in this case, to be treated as a mortgage securing the payment of said loan of $6,550.23?

2.  If it is to be treated as a mortgage, it being conceded that the defendant sold the said property to an innocent purchaser without any notice of the agreement between the said defendant and the plaintiff herein in relation to said title, what is the proper remedy to which the plaintiff is entitled in this action?

The cases in Ohio are numerous upon this question of when a deed absolute in form may be treated as a mortgage, and the two leading cases are as follows: *Larue* v. *Desenberg et al*, 28 O. S., 371, and *Wilson* v. *Giddings*, 28 O. S., 554.

I am convinced, under all the testimony in this case, oral as well as written, that the deed held by defendant for the property described in the petition was intended by all parties interested to be a mortgage for the purpose of securing the sum of $6,550.23, which was advanced by the defendant to the plaintiff for the purpose of redeeming said property from sheriff's sale in the foreclosure proceeding pending in this court.

The land contract attached to the plaintiff's petition was determined upon at the time the deed was executed and delivered on the 24th day of January, 1911, but for some reason was not executed until some days thereafter. This agreement provided for a retransfer by the defendant to the plaintiff of the property described in the petition, upon payment of the amount due him on the loan previously made, together with taxes, interest, and such other legitimate charges as he may have against the plaintiff arising out of the transaction, provided the said sums due him should be paid by the plaintiff upon sixty days notice in writing to said plaintiff.

I am further satisfied, under the proof in this case, that the said defendant never called upon the plaintiff herein to pay said sums; and that upon the 26th day of October, 1915, without notice to the plaintiff or her agent, Charles S. Huling, he conveyed said property to the said Maude J. Hartman and that she was an innocent purchaser without any notice of the equities existing between the plaintiff and the defendant, Daniel A. Huling.

The claim of the defendant that he held this property in trust in order to secure not only the sum of $6,550.23, but other sums mentioned in his answer, and that he was to dispose of the property and repay the debts which he claims he had secured by virtue of this warranty deed, and divide the balance remaining in his hands, after the payment of said debts, equally between plaintiff and himself, is not sustained by the evidence in this case. There is serious dispute between the parties as to the surrender of the note of $6,550.23 by the defendant to the plaintiff's agent at the time of the delivery of the warranty deed under consideration. The plaintiff and her agent deny that they ever received said note, and now claim that they are liable upon said note for the full amount of the same with interest. The defendant has been unable to support his claim in regard to the delivery of said note by any testimony, and the said note was not produced at the trial of this cause. I am therefore unable to hold that said note was delivered at said time, and therefore treat the debt as an existing obligation owing by the plaintiff to the defendant, Daniel A. Huling.

I therefore, under all the proof in the case, hold that the deed executed on the 24th day of January, 1911, by the plaintiff to said Daniel A. Huling, is to be treated as a mortgage securing only the debt of $6,550.23 and interest due upon the same, and also the taxes paid by the said Daniel A. Huling upon said property with interest thereon, and that the right still exists in the plaintiff to redeem said property.

The plaintiff, in view of the fact that the defendant has wrongfully disposed of this property, asks the court to give her a judgment in redemption, and claims that she should be allowed a judgment in money for the difference between the value of the property described in the petition at the time of trial and the amount of the claims owing by her to the said defendant, Daniel A. Huling. As a matter of course, I have disregarded the claims of Daniel A. Huling made upon the notes owing by Charles S. Huling to him and set up in his answer, except the note of $6,550.23.

The question which has given me the most serious consideration has been the question of the remedy under all the facts and circumstances in this case. I have not been referred to any case in Ohio providing for the remedy which the plaintiff is now seeking in this action, but I have been referred to several cases in the state of New York, and also to a reference in Jones on Mortgages, Volume 1, Section 341, which reads as follows:

"When the grantee has wrongfully conveyed the property, the grantor may, however, at his election, claim the proceeds of the sale or the value of the land at the time when the debtor's right to have it restored to him is established. But in a suit for the proceeds it is not necessary for the plaintiff to make a tender, as the grantee, by the sale, has put it out of his power to convey."

The case of *Mooney* v. *Byrne*, 163 N. Y., page 86, is the case upon which plaintiff mainly relies for the remedy which she now seeks, and is a case which, after the most careful consideration, I have determined to follow. Reading from page 92 of the opinion, I find this language quoted from the case of *Peugh* v. *Davis*, 96 United States, 322-336:

"It is an established doctrine that a court of equity will treat a deed, absolute in form, as a mortgage, when it is executed as

security for a loan of money. That court looks beyond the terms of the instrument to the real transaction, and when it is shown to be one of security, and not of sale, it will give effect to the actual contract of the parties. * * * It is also an established doctrine that an equity of redemption is inseparably connected with a mortgage; that is to say, so long as the instrument is one of security, the borrower has, in a court of equity, a right to redeem the property upon payment of the loan. This right can not be waived or abandoned by any stipulation of the parties made at the time, even if embodied in the mortgage. This is a doctrine from which a court of equity never deviates.''

Reading from the same page, this language is used:

''The right to redeem is an essential part of a mortgage, read in by the law if not inserted by the parties. Although many attempts have been made, no form of covenant has yet been devised that will cut off the right of a mortgagor to redeem, even after the law day has long passed by. Even an express stipulation not to redeem does not prevent redemption, because the right is created by law.''

On page 94 of the opinion it is said:

''The plaintiff, therefore, is a mortgagor, whose right to redeem from the mortgagee in possession has not been cut off nor cut down by any act or omission on her part. * * * Can a mortgagee, by his own act, without a judicial sale or the consent of the mortgagor, destroy the right to redeem, which is so carefully guarded by the courts? The mortgagee could not, by selling the mortgaged premises, change the rights of the plaintiff as against himself. As to him, she still has the right to redeem, for by his act, without her knowledge or consent, he could not annul his covenant to reconvey. That covenant is still in force, and the plaintiff may compel its performance, so far as the rights of third parties, acquired under the Recording Act, will permit. * * * No act of his could utterly destroy her cause of action to redeem. He might affect its value, but he could not take its life. As a substitute for a decree requiring him to repurchase the land and convey it to her, which might be impossible and would be apt to involve hardship, she may treat the value of the land, measured in money presumed to be in his lands when her right to redeem was established, as land, and enforce the right of redemption accordingly. Unless we virtually sanction his wrongdoing by permitting him to defeat her right of redemption absolutely by his own act, upon showing

a right to redeem, she must be permitted to make the best redemption possible as against him. Because he has put it out of his power to render to her all she is entitled to, he can not refuse to make the nearest approach to it that is left. A court of equity, in order to bring about an equitable result, disregards forms and treats money as land and land as money, when required to prevent injustice. * * * In order to prevent him from making a profit out of his wrong, the law raises the presumption that he now has the full value of the land as a separate fund in his hands, and treating it as land allows the plaintiff to redeem, the same as if it were in fact land. As against the wrongdoer and his estate it will exert all its power to make the plaintiff whole, paying due regard to equities arising through improvements upon the land, so as not to give her more than she is equitably entitled to."

On page 96, quoting from the case of *Meehan* v. *Forrester*, 52 N. Y., 277, the following:

"The sale was shown to have been made without the consent of Meehan and in violation of his rights, and it does not appear that the plaintiff ever had notice of it. He was not bound by such a sale. He was entitled to his land, on payment of the amount due to Bertine or his representatives. If Bertine, by reason of his own wrongful act, had deprived himself of the ability to restore the land to which the plaintiff is equitably entitled, he or his representatives were bound to account to the plaintiff, at his election, either for the proceeds of sale of the land, or its value at the time when the plaintiff's right to such reparation was established."

Further reading from the opinion on page 96 is the following language directly in point:

"So in the case at bar, the plaintiff established the same right, but the defendant showed that he had placed it beyond his power to reconvey. Thereupon in rebuttal and not as a part of her cause of action, the plaintiff had the right to prove the present value of the land, so as to follow the money presumed to be in the defendant's hands, and redeem that which he had wrongfully substituted for the land, the same as if it were in fact land. Guided by the cardinal principle that the wrongdoer shall make nothing from his wrong, equity so moulds and applies its plastic remedies as to force from him the most complete restitution which his wrongful act will permit. (*May* v. *Le Claire*, 88 U. S., 217; *Miller* v. *McGuckin*, 15 Abb. (N. C.), 204; *Enos* v.

*Sutherland,* 11 Mich., 538, 542.) When he can not restore the land it will compel him to restore that which stands in his hands for the land, and will not permit him to assert that it is not land when the assertion would be profitable to himself but unjust to the one whom he wronged. He can not escape by offering to pay what he received on selling the lands, but must pay the value at the time of the trial. He can not cut off the right of redemption and convert it into a personal liability, for he is still a mortgagee, and subject as such to the mortgagor's rights. The fact that the injured mortgagor need not take the proceeds of the sale, but may insist on the proved value of the land, as well as the pleadings and proofs, show that this is a pure action to redeem, and must be so regarded for all purposes, including the defense of the statute of limitations. While the mortgagor is helpless as against his grantee, she is not helpless as against him.''

Without further quoting from this interesting and instructive case, I am convinced that, upon the election of the plaintiff herein, she is entitled to the remedy which she is now seeking. I permitted testimony to be given at the trial relating to the value of the property described in the petition at the time of the trial, over the objection of the defendant herein. The defendant offered no testimony in relation to the value of the property, nor did his counsel cross-examine the witnesses called by the plaintiff upon that subject. I am therefore bound, under the testimony introduced at the trial relating to the value of the property, to find it of the value of $1,800 per acre.

I am therefore constrained to hold that the plaintiff is entitled to a redemption judgment of the difference between the value of this property at the time of the trial and the amount owing by her to the defendant herein, the said amount to be determined by computing interest upon the loan of $6,550.23, and also the taxes and interest thereon paid by the defendant.

I note an exception by defendant to this finding, and I also fix an appeal bond in the sum of $200.